IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIGUEL JOSE GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 08-1236 |
| v. | ) | |
| | ) | District Judge Arthur J. Schwab |
| JANET KIMMEL (Unit Manager); | ) | |
| WILLIAM COLE (Unit Manager); W. | ) | |
| WOODS (Unit Manager); CRAWFORD | ) | |
| (Corrections Officer); R. GILKEY | ) | |
| (Corrections Officer), MICHAEL A. | ) | |
| HARLOW (Superintendent): JEFFREY A. | ) | |
| BEARD (Secretary of DOC); and the | ) | |
| PENNSYLVANIA DEPARTMENT OF | ) | |
| CORRECTIONS, | | |
| Defendants. | | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff, Miguel Jose Garcia, commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 and Pennsylvania state law against correctional officials and employees at the Pennsylvania State Correctional Institution at Mercer and the Pennsylvania Department of Corrections (DOC) .   In his lengthy Complaint, Plaintiff makes claims of cruel and unusual punishment, retaliation, denial of equal protection and due process with respect to Plaintiff's vocational training, denial of state issued soap, denial of legal supplies, denial of automotive certification and denial of clearance for outside employment.

**A. Standard of Review**

Both parties have submitted motions for summary judgment.  Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the pleadings, depositions,

answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. Rule Civ. Proc. 56(c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (party can move for summary judgment by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case.").  The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact.  Once that burden has been met, the non-moving party must set forth specific facts showing that there is a genuine issue for trial or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Fed. Rule Civ. Proc. 56(c).  *See also* Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The inquiry, then, involves determining " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-52).  If a court concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted.  Anderson, 477 U.S. at 249-50.

## B. Exhaustion of Administrative Remedies

This Court first must determine which claims, if any, for which Plaintiff fully exhausted his available administrative remedies as required by the Prison Litigation Reform Act

(PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996).  In this regard, in the PLRA, Congress amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e, concerning suits by prisoners.  Before the amendments, prisoners challenging the conditions of their confinement under 42 U.S.C. § 1983 were not required to exhaust administrative remedies before filing suit.  The PLRA amended section 1997e(a), as follows, making exhaustion a mandatory requirement.

    (a)    Applicability of administrative remedies

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), as amended.

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner).  In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions.  In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion requirement.  Booth, 206 F.3d at 300; Nyhuis, 204 F.3d at 66.  A unanimous Supreme Court affirmed the Court of Appeals' holding in Booth v. Churner, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated complete exhaustion of administrative remedies, regardless of the relief offered through those administrative procedures.  In addition, in Porter v.

<u>Nussle</u>, 534 U.S. 516 (2002), the Supreme Court clarified that the PLRA's exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes and whether they allege excessive force or other conduct.

The administrative grievance procedure for Pennsylvania inmates is codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804, entitled "Inmate Grievance System." The purpose of the grievance system is to insure that an inmate has an avenue through which resolution of specific problems can be sought. DC-ADM 804 Part II. The grievance system applies to all state correctional institutions and provides three levels of review: 1) initial review by the facility grievance coordinator; 2) appeal of initial review to the superintendent or regional director; and 3) final appeal to the Secretary's Office. DC-ADM 804 Parts V & VI. The administrative policy further provides that, prior to utilizing the grievance system, prisoners are encouraged to attempt to resolve problems on an informal basis through direct contact or by sending an inmate request slip to the appropriate staff member. DC-ADM 804 Part VI.A.4.

A prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after filing a complaint in federal court. <u>Ahmed v. Dragovich</u> 297 F.3d 201, 209 (3d Cir. 2002). Moreover, a Pennsylvania prisoner may procedurally default his claims by failing to comply with the procedural and substantive requirements of DOC's grievance policy as set forth in DC ADM 804 thereby precluding an action in federal court. *See* <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004). In so holding, the Court of Appeals for the Third Circuit specifically held that failure to specifically name accused individuals in a grievance amounted to procedural default because the regulations so required. The relevant regulations provide as follows:

The inmate will include a statement of the facts relevant to the claim. The text of the grievance must be legible, *understandable, and presented in a courteous manner*, and the statement of facts shall not exceed two pages (one DC-804, Part 1 and one one-sided 8-1/2" x 11" page). The inmate will identify any person(s) who may have information that could be helpful in resolving the grievance. In Section B of the DC-804, Part 1, the inmate should also include information on attempts to resolve the matter informally. The inmate will also specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law. If the inmate desires compensation or other legal relief normally available from a court, the inmate shall request the specific relief sought in his/her initial grievance.

DC-ADM 804, Part VI.A.7 (January 3, 2005) (emphasis in original).

In <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006), the Supreme Court of the United States held that an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the PLRA's mandatory exhaustion requirement.

Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." This Court has described the doctrine as follows: "[A]s a general rule ⋯ courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

<u>Woodford</u>, 548 U.S. at 90 (internal citations, quotations and footnotes omitted).

The Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage.  The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Woodard, 548 U.S. at 93 (internal citations omitted).  The Court concluded that the benefits of exhaustion could only be realized if the prison grievance system is given a fair opportunity to consider the claims, which required the grievant to comply with all procedural rules.  Woodford, 548 U. S. at 95.[1]

In the instant action, the relevant record evidence shows the following with respect to the claims set forth in Plaintiff's Complaint.  On January 29, 2008, Plaintiff filed Grievance Number 216040-08 against B counselor Ms. Kimmel complaining that she intentionally delayed his staffing for M Clearance, which was necessary for his participation in outside work in the auto shop.  In his grievance, Plaintiff accused Ms. Kimmel of failing to follow DOC policy in regard to staffing him because he met all of the initial criteria for staffing.

Outside prisoner staffing is allowed under DOC policy DC-ADM 805 " Pre-Release, Outside Work and Housing Assignments, Community Works Programs, Escorted Leave, Armed

---

1.  Subsequently, the Supreme Count ruled that a Michigan state inmate's failure to name the defendants during the course of the grievance procedure did not constitute a failure to exhaust because there was no such requirement to do so in the Michigan state grievance policy. See Jones v. Bock, 549 U.S. 199 (2007).  Because Pennsylvania regulation does so require, the holding in Jones does not apply to Pennsylvania prisoners.  *Accord* McKinney v. Kelchner, 2007 WL 2852373, *4 (M. D. Pa. Sept. 27, 2007).

Mounted Work Detail, and Forestry Units Programs."  This policy provides that outside work assignment is approved by a formal staffing process and that no rights are provided for under the policy.  DC-ADM, Parts III and VI.  There is no mandatory requirement that inmates meeting the eligibility requirements will receive outside clearance.  "Satisfying all eligibility criteria (and the absence of any exclusionary factors) does not automatically qualify an inmate for program participation. A number of other considerations will be taken into account – such as the relevancy of the program to the inmate's reintegration needs, staff evaluation of inmate progress and adjustment, community risk/safety, and the availability of programmatic resources." DC-ADM 805 Section 1, Part B.2.

In responding to Plaintiff's Grievance, Defendant Cole advised Plaintiff that outside clearance is a privileged program and not a right and that defendant Kimmel was within her rights to review his case and get to know him as an inmate before conducing the required staffing (doc. no. 18-4, p. 12).  Plaintiff appealed this decision to Superintendent Harlow who upheld the decision and notified Plaintiff as follows.

> I have found no evidence in your accusations of retaliation, discrimination or harassment by any staff member of SRCF-Mercer. The classification process is a multi-faceted system that takes into consideration many aspects of an inmate's case.  The Unit Management Team will staff you at their discretion.  Institutional need is also multi-faceted with no one individual, staff member, or office making such a determination (doc. no. 18-4, p. 13).

On February 12, 2008, Plaintiff filed an Inmate Request to Staff Member again complaining about the failure to staff him for outside clearance.  In response, Defendant Cole stated "I support Ms. Kimmel staffing you in September at your next annual review.  This will give us

ample time to see if you will <u>adjust</u> well or not." (See Doc. No. 18-4, p. 15) (emphasis in original.)

Plaintiff filed a second grievance against Ms. Kimmel, Grievance Number 218406- 08, on February

15, 2008 (doc. no. 18-4, p. 17).  On February 28, 2008, Defendant Cole advised Plaintiff as follows.

> . . . Mrs. Kimmel has the authority to evaluate your adjustment and
> behavior as an inmate prior to staffing your for a 2 "M."  If the
> institution feels you will not adjust well, have issues with authority,
> etc. they will not staff you.  The institution can also remove any
> program code from an inmate if the unit staff does not believe he is
> adjusting well.  This is according to the DC-ADM-805.  As the
> previous grievance stated and according to the DC-ADM 805, outside
> clearance is neither a right nor an entitlement.  It's simply a privilege
> that will be afforded to inmates the department feels is [sic] eligible,
> stable and will help the operations of the institution.  This is a multi-
> faceted approach and simply not one person who request help in a
> particular area (doc. no . 18-4, p. 18).

Pursuant to these two grievances, Plaintiff has exhausted his claims with respect to

Count One of his Complaint.  Accordingly, these claims will be discussed on the merits below.

On March 18, 2008, Plaintiff filed Grievance Number 222252-08 against Unit

Manager Defendant Woods complaining of his inability to take desired vocational classes at

SRCF-Mercer and requesting a transfer to another institution (doc. no. 18-4, p. 2).  In response to

his grievance, it was noted that Plaintiff received an incentive based transfer to Mercer on January

8, 2008.  Plaintiff was informed that the Education Department at Mercer only provided basic levels

of ASE certification and that, pursuant to DOC policy, Plaintiff was not eligible for another incentive

based transfer until January of 2009 (doc. no. 18-4, p. 4).  Pursuant to this grievance, Plaintiff has

exhausted his claims with respect to Count Two of his Complaint.  Accordingly, these claims will

be discussed on the merits below

On June 2, 2008, Plaintiff filed Grievance No. 219406-08 alleging that Defendant Cole retaliated against him by removing him from H Block and placing him into dormitory housing (doc. no. 18-5, p. 6).  In response, Plaintiff was informed that, pursuant to DOC policy, the fact Plaintiff once had a Z-Code status (single cell status) did not preclude him from open dormitory housing and that housing assignments are based on various factors including security, medical and programming needs and that Plaintiff's Unit Management Team had reviewed these factors and supported Plaintiff's placement in dormitory housing (doc. no. 18-5, p. 7).  Pursuant to this grievance, Plaintiff has exhausted this claim (which also was included in Count One of the Complaint) and it will be discussed on the merits below.

Sometime prior to May 8, 2008, Plaintiff filed Grievance No. 227421-08 complaining that Defendant Cole refused to give him free soap.  In response, Plaintiff was informed that he was denied free soap because he was not considered indigent and, therefore, not entitled to free soap (doc. no. 18-5, p. 11).  Pursuant to this grievance, Plaintiff has exhausted his claims with respect to Count Three of his Complaint.  Accordingly, these claims will be discussed on the merits below.

On June 2, 2008, Plaintiff filed Grievance No.231073-08 alleging that Defendant Gilkey racially discriminated against him in conjunction with a search and seizure of his cell, which resulted in a misconduct for the destruction of DOC property.  Plaintiff subsequently voluntarily withdrew this grievance (doc. no. 18-2, p. 2).  Plaintiff filed a second grievance on the matter, Grievance Number 235445-08, and was informed that his claims were waived by his previous voluntary withdrawal (doc. no. 18-2, p. 9).  Plaintiff did not appeal the dismissal of this grievance. As such, Plaintiff failed to exhaust administrative remedies with regard to his claims set forth in Count V of the instant Complaint and the claims have been procedurally defaulted.

## C. Liability under Section 1983

Plaintiff's complaint seeks recovery under 42 U.S.C. § 1983.  In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements:  1) the alleged misconduct must have been committed by a person acting under color of state law; and 2) the defendants' conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

In addition, to establish liability against a defendant in a Section 1983 action, that defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981) (overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986)); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976).  Personal involvement by a defendant can be shown by alleging either "personal direction or ... actual knowledge and acquiescence."  Rode, 845 F.2d at 1207.

The issues at bar concern whether Defendants have violated any of Plaintiff's constitutional rights.  Plaintiff seeks recovery against Defendants based on violations of the First, Eighth and Fourteenth Amendments of the United States Constitution.  His claims are discussed separately below.

## D. First Amendment

The First Amendment provides as follows.

> Congress shall make no law respecting an establishment of religion, or prohibiting the free

10

> exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend. I.

1.     Access to Courts

Plaintiff's allegations in Count Four of his Complaint allege that he was denied adequate legal supplies.[2]  In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  Id. at 828.  However, in Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court effectively repudiated much of its prior holding in Bounds.  In Lewis, the Supreme Court held that Bounds did not recognize an independent right of prisoners to have an adequate law library; instead, it addressed the established right of access to the courts.  Lewis 518 U.S. at 351.  Thus, the Lewis Court held that, in order to successfully challenge a denial of this right of access to the courts, it is not enough for an inmate to establish that the law library provided was inadequate or he was denied access either to the law library or to legal materials; rather, he must establish that such inadequacies in the library or in accessing legal materials caused him actual harm.

---

2.  Defendants did not move to dismiss this claim on the basis of exhaustion as they did for Plaintiff's claims raised in Count Five of the Complaint.  The failure of a prisoner to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendants unless the inmate's failure to exhaust is clear on the face of the complaint.  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir.2002).  Notwithstanding, this Court may review and dismiss an unexhausted claim pursuant to 42 U.S.C. § 1997e(c)(2).

In order to establish a violation of the right of access to the courts, a plaintiff must demonstrate that the defendant took, or was responsible for, actions that hindered his efforts to pursue a non-frivolous legal claim, which resulted in actual injury to him.  Lewis, 518 U.S. at 351. *See also* Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997) (In order to pursue civil rights claim against prison officials for interference with his access to court inmate was required to show that he was actually injured).  In other words, the plaintiff must allege facts that show that the defendants deliberately and maliciously interfered with his access to the courts and that such conduct materially prejudiced a valid legal action he sought to pursue.

In Christopher v. Harbury, 536 U.S. 403 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts.  Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint:  1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit.  Christopher, 536 U.S. at 415.

The Court explained that the first requirement mandated that the plaintiff specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued independently.  Christopher, 536 U.S. at 417.  In this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that the "the 'arguable' nature of the underlying claim is more than hope." *Id*.  The second requirement requires a Plaintiff to clearly allege in the Complaint the official acts that frustrated the underlying litigation.

12

Third, a Plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation.  *Id*. at 414.

Here, Plaintiff has failed to identify any legal action he was unable to pursue as a result of Defendant's alleged actions.  Thus, Defendants are entitled to summary judgment with respect to Plaintiff 's claims as set forth in Count Four of his Complaint.

2.    Retaliation

Plaintiff also claims that Defendants violated his First Amendment rights by retaliating against him for filing grievances.  It is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution, and is actionable under section 1983.  Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990).  However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things:  (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action.  *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997). If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors.  Mt. Healthy, 429 U.S. at 287.  "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.  Because retaliation claims can easily

be fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner.  *See* Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996).

Under the first element, a plaintiff must show that he engaged in constitutionally-protected activity.  Here, Plaintiff alleges that Defendants retaliated against him because he had filed numerous grievances.  A prisoner's ability to file grievances and lawsuits against prison officials is a constitutionally-protected activity for purposes of a retaliation claim.  *See* Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution); Woods, 60 F.3d at 1165 (prison officials may not retaliate against an inmate for complaining about a guard's misconduct).  Thus, Plaintiff's allegations may satisfy the first element of a retaliation claim.

Under the second element of a retaliation claim, a plaintiff must allege that he was subjected to adverse actions by a state actor.  A plaintiff can satisfy the second requirement by demonstrating that the "adverse" action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  *See* Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).  With respect to the second element, Plaintiff alleges that he was not immediately staffed for outside clearance, he was moved to dormitory housing, denied free soap, and denied another incentive transfer.  It is unclear whether these allegations are sufficient to demonstrate the second element of a retaliation claim.

The third element of a retaliation claim requires a plaintiff to demonstrate that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse

action.  This "motivation" factor may be established by alleging a chronology of events from which retaliation plausibly may be inferred.  Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Goff v. Burton, 91 F.3d 1188 (8th Cir. 1996); Pride v. Peters, 72 F.3d 132 (Table), 1995 WL 746190 (7th Cir. 1995).  Moreover, prison officials may still prevail on a retaliation claim by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Rauser, 241 F.3d at 334.

Here, the record shows that Defendants' conduct was taken for reasons reasonably related to a legitimate penological interest.  With respect to his allegation that Defendant Kimmel failed to immediately staff and approve him for outside clearance, delaying staffing for outside clearance until the staff has had an opportunity to review an inmate's case and get to know an inmate to determine whether he or she will adjust well serves the utmost legitimate penological concern of ensuring the safety and welfare of the citizens of the Commonwealth.  It simply is not reasonable to expect prison officials to immediately grant recently transferred inmates outside clearance without sufficient time for proper evaluation of the significant risks such a privilege entails.  Moreover, the record reflects that Plaintiff was staffed and evaluated within six months after his transfer to Mercer and that he was denied outside clearance based on security concerns as well as a misconduct that he pleaded guilty to (doc. no. 18-5, p. 2).

With respect to his transfer to dormitory housing, as Plaintiff was informed, having Z Code status did not preclude transferring him to such housing. Moreover, Plaintiff did not even have Z Code status at the time he was placed in dormitory housing as such status was unanimously revoked from him on August 22, 2007 due to his refusal to meet with Psychology (doc. no. 18-5, p. 4).  The written response to his grievance informed Plaintiff that his housing assignment was based

15

on security, medical and programming needs.  This response satisfies the Defendants' burden of showing that they had a reasonable basis for transferring him to dormitory housing.

As to his claim he was retaliated against by failing to allow him to transfer to another prison to get his ASE re-certification, pursuant to DOC policy, Plaintiff had to wait one year to apply for another incentive-based transfer.  Such requirement is not arbitrary but based on legitimate concerns regarding time and budget restraints inherent in prison administration.  Moreover, Plaintiff was not denied vocational training, rather, he was limited to the vocational training offered at Mercer.

Finally, as to the denial of soap for 39 days, the Court notes that Defendants included in their Motion Attachment 3-D, to DC-ADM 803, which includes the definition of an Indigent Inmate.  This definition provides that an inmate is indigent if the combined balances of his/her facility account and any other accounts are $10.00 or less at all times during the 30 days preceding the date on which the inmate submits a request to a person designated by the Facility/Manager/designee (doc. no. 18-3, p. 27) (emphasis added).  Defendants attached Plaintiff's inmate account statement, which shows that he did not meet the indigent requirements (doc. no. 18-5, p. 19).  Thus, Defendants' actions in requiring Plaintiff to purchase his own soap was not arbitrary but based on legitimate penological budget concerns.  Consequently, Defendants are entitled to judgment as a matter of law with respect to Plaintiff's retaliation claims.

### E. Eighth Amendment

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.  The Eighth Amendment's prohibition

against cruel and unusual punishment guarantees that prison officials must provide humane conditions of confinement.  Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  In order to prove an Eighth Amendment claim, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  The Supreme Court has explained that the first showing requires the court objectively to determine whether the deprivation of the basic human need was "sufficiently serious."

> [E]xtreme deprivations are required to make out a conditions-of-confinement claim.  Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."

Hudson v. McMillan, 503 U.S. 1, 9 (1992) (citations omitted).

Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials.  Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.  The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind.  Id.  "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Farmer, 511 U.S. at 834 (quotation omitted).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive

17

> risk to inmate health or safety; the official must both be aware of facts
> from which the inference could be drawn that a substantial risk of
> serious harm exists, and he must also draw the inference. . . .  The
> Eighth Amendment does not outlaw cruel and unusual "conditions";
> it outlaws cruel and unusual "punishments."

Farmer, 511 U.S. at 838.  Furthermore, "prison officials who act reasonably cannot be found liable

under the Cruel and Unusual Punishments Clause." *Id*., 511 U.S. at 845.  Thus, a prison official may

be held liable under the Eighth Amendment for denying humane conditions of confinement only if

he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to

take reasonable measures to abate it.

      Here, Plaintiff simply has not come forward with any evidence that he was exposed

to objectively harmful conditions and that any Defendant was deliberately indifferent to it.  While

the Court assumes that Plaintiff was denied soap for a period of 39 days, he himself admits that he

was able to wash himself with shampoo.  Although he claims that he suffered a skin rash as a result,

he received adequate medical care for his rash.  And finally, Plaintiff was not entitled to free soap

because he was not indigent.  In fact, Plaintiff's account statement shows that he had over thirty

dollars in his account during the relevant time period.  Thus, Plaintiff can not show that Defendants

acted with deliberate indifference.

      The Constitution does not mandate comfortable prisons.  Rhodes, 452 U.S. at 349.

Prisons housing "persons convicted of serious crimes cannot be free of discomfort." *Id*.  Plaintiff's

allegations do not demonstrate inhumane treatment or the substantial risk of serious harm.

Accordingly, Defendants are entitled to judgment as to Plaintiff's Eighth Amendment claim. *Cf*.

Rivera v. Pennsylvania Dept. of Corrections  837 A.2d 525, 530-532 (Pa. Super. 2003).

## F. Fourteenth Amendment

Plaintiff's remaining claims allege violations of his rights as secured by the Fourteenth Amendment, which provides, in relevant part, as follows.

> . . .  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV.  Section 1.

1.   Due Process

The Supreme Court has determined that three kinds of claims may be brought against the State under the Due Process Clause of the Fourteenth Amendment.  Zinermon v. Burch, 494 U.S. 113, 125 (1990).  First, a plaintiff may bring suit under section 1983 for a violation of his specific rights as guaranteed by the Bill of Rights.  *Id.*  Second, a plaintiff may assert a Fourteenth Amendment claim under the "procedural" aspect of the Due Process Clause, which guarantees fair procedure for the deprivation of a constitutionally-protected interest in life, liberty or property.  *Id.* Third, a plaintiff may assert a claim under the "substantive" prong of the Due Process Clause, which bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.  *Id.* (quoting Daniels v. Williams, 474 U.S. at 331)).

Under the first category, Plaintiff's allegations invoke the protections of his specific rights as guaranteed by First and Eighth Amendments in the Bill of Rights, which are discussed above.

With respect to the second category, procedural due process, the Due Process Clause of the Fourteenth Amendment does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner.  Meachum v. Fano, 427 U.S. 215, 224 (1976).  The Due Process Clause shields from arbitrary or capricious deprivation only those facets of a convicted criminal's existence that qualify as protected liberty or property interests.  Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972).  The types of protected interests are not unlimited.  The interest must rise to more than an abstract need or desire and must be based on more than a unilateral hope.  Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it.  Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (citation omitted).

A protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation.  Hewitt, 459 U.S. at 466.  A protected interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process.  Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973).  Interests recognized by the Supreme Court that fall within this category include the revocation of parole, Morrissey, 408 U.S. at 471, and the revocation of probation, Gagnon, 411 U.S. at 778.  However, it has long been held that the Due Process Clause does not provide a federal liberty interest guaranteeing housing in a particular penal institution or providing protection against transfer from one institution to another within the state prison system.  Meachum v. Fano, 427 U.S. 215, 224-225; Montanye v. Haymes, 427 U.S. 236 (1976).  Nor is there an inherent due process right not to be transferred to another cell within in a prison.  Kimball v. Walters, 2007 WL 87897, 12 (M.D. Pa. Jan. 9, 2007).  Also, there is no inherent

due process right to pre-release under the United States Constitution, Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 - 11 (1979), and there is no federal constitutional right to placement in a work release program.  Winsett v. McGinnes, 617 F.2d 996, 1004 (3d Cir. 1980).  Also, there is no inherent due process right to prison employment or work opportunities.  James v. Quinlan, 866 F.2d 627, 629 (3d Cir.), *cert. denied*, 493 U.S. 870 (1989).  Finally, an inmate has no inherent liberty or property interest in education programs offered in prison.  Brooks v. DiGuglielmo, 2008 WL 5187529, 7 (E.D. Pa. Dec. 9, 2008).  Thus, Plaintiff in the instant case can succeed under the Due Process Clause only if state law or regulation has created a constitutionally-protected liberty interest in his claims.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court dramatically narrowed the range of liberty interests created by law and regulation.  Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 483 (emphasis added).

Plaintiff asserts that he has suffered a due process violation with respect to his education opportunities, employment, "M" outside clearance status, transfer to dormitory housing, and the failure to transfer him to another facility in order for him to complete his ASE certification requirements.  Neither Pennsylvania state law nor its regulations nor DOC policy provide any state-created liberty or property interest in any of Plaintiff's claims.  DOC officials charged with implementing Pennsylvania's work release, facility placement, facility transfer, cell placement, education and work opportunities programs are vested with broad discretion; no rights are created

under the relevant policies and no inmate is automatically entitled to participate in any program even if he meets the minimum criteria.

The Court of Appeals for the Third Circuit specifically has held that prisoners do not have a liberty interest in remaining in a work release program under the analysis set forth in Sandin v. Conner, 515 U.S. 472 (1995).  *See* Asquith v. Department of Corrections, 186 F.3d 407, 411 (3d Cir. 1999).  Thus, Plaintiff has no due process claim for outside work release status.  Similarly, Pennsylvania prisoners do not have any state created interest in specific housing.  Johnson v. Hill, 910 F.Supp. 218, 220 (E. D. Pa. 1996) (holding that prisoner placement is a matter of prison administration and a prisoner has no constitutional right to be placed in any particular cell or housing unit.  Moreover, Pennsylvania code clearly states that an inmate does not have a right to be housed in a particular facility. 37 Pa.Code § 93.11(a).  Thus, Plaintiff has no state created liberty interest to be incarcerated in a particular institution or in a particular cell.  Jerry v. Williamson, 211 Fed.Appx. 110, 112, 2006 WL 3741840, *2 (3d Cir. Dec. 20, 2006).   Nor does Pennsylvania provide any state created right to specific education programs offered in prison, Brooks v. DiGuglielmo, 2008 WL 5187529, at *7, or prison employment.  *See* Savage v. Kerestes, 2009 WL 1585807, 2 (M.D. Pa. June 3, 2009) ("The right to earn wages while incarcerated is a privilege, not a constitutionally guaranteed right.").  Thus, Plaintiff's allegations fail to state a claim upon which relief may be granted on the basis of a violation of his procedural due process rights.

The third prong of the Due Process Clause is the constitutional right to "substantive due process" under the Fourteenth Amendment.  This right protects individuals against arbitrary

governmental action regardless of the fairness of the procedures used to implement them.[3]   The Supreme Court has declined to set forth a precise rule outlining the contours of "arbitrary" conduct. Notwithstanding, in County of Sacramento v. Lewis, 523 U.S. 833 (1998), the court instructed that the substantive component of the Due Process Clause can be violated by governmental employees only when their conduct amounts to an abuse of official power that "shocks the conscience."  In so holding, the court reiterated its long standing jurisprudence that only the most egregious official conduct can be said to be "arbitrary" in the constitutional sense.  The court further instructed that courts should employ a variable range of culpability standards, dependant upon on the circumstances of the case, in determining whether certain actions rise to a constitutionally "shocking" level.

        In the present action, Plaintiff seeks to impose liability on the basis of Defendants' alleged actions in failing to immediately staff him for "M"outside status, denying him outside clearance, transferring him to dormitory housing, failing to provide him with education opportunities and for failing to immediately transfer him to a another facility where he could renew his ASE certifications/licenses.  It simply is beyond question that it cannot be said that Defendants' actions amounted to government action that shocks the conscious.  Consequently, Plaintiff has failed to state a claim upon which relief may be granted under the substantive prong of the Due Process Clause and Defendants are entitled to summary judgment with respect to Plaintiff's claims alleging violations of the Due Process Clause.

        2.      Equal Protection

---

3.  See Collins v. Harker Heights, 503 U.S. 115, 126 (1992) (the Due Process Clause was intended to prevent government officials from abusing power, or employing it as an instrument of oppression); Wolff v. McDonnell, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government.").

The Plaintiff also raises a claim of discrimination under the Equal Protection Clause of the Fourteenth Amendment, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."   U.S. Const. Amend. XIV, § 1.   "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.' "   Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985)).

The level of scrutiny applied to ensure that classifications comply with this guarantee differs depending on the nature of the classification.   Classifications involving suspect or quasi-suspect class, or impacting certain fundamental constitutional rights, are subject to heightened or "strict" scrutiny.   City of Cleburne, 473 U.S. at 439.   Other classifications are subject to the "rational basis" test, which requires that a classification need only be rationally related to a legitimate state interest to survive an equal protection challenge.   F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993) (statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts); Chapman v. United States, 500 U.S. 453, 465 (1991).

Prisoners are not a suspect class.   Lee v. Governor of State of N.Y., 87 F.3d 55, 60 (2d Cir. 1996); United States v. King, 62 F.3d 891, 895 (7th Cir. 1995); Latham v. Brown, 11 F.3d 1070, 1993 WL 394802 (D.C. Cir. 1993).   Because prisoners are not a suspect class, the government may treat incarcerated defendants differently as long as its decisions are "rationally related to a legitimate ... [government] interest."   King, 62 F.3d at 895 (quoting City of Cleburne, 473 U.S. at 440).   Moreover, to demonstrate an equal protection violation, an inmate has the burden of proving the existence of purposeful discrimination.   Hernandez v. New York, 500 U.S. 352 (1991);

McCleskey v. Kemp, 481 U.S. 279, 292 (1987). Official action does not violate the Equal Protection Clause solely because it results in a disproportionate impact; proof of discriminatory intent or purpose is required to show a violation. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265 (1977); Washington v. Davis, 426 U.S. 229, 239 (1977); Stehney v. Perry, 101 F.3d 925, 938 (3d Cir. 1996). Discriminatory purpose implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker selected a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group. Hernandez, 500 U.S. at 360. An inmate must offer evidence specific to his own case that would support an inference that unlawful considerations played a part in the adverse decision. McCleskey, 481 U.S. at 293.

In the case at bar, Plaintiff complains that inmates who desire to become barbers or cooks are allowed to be transferred to other institutions to obtain and renew their required barber certifications. Here, Plaintiff was denied a transfer based on DOC policy because he had just been transferred to SCI-Mercer and was not eligible for another incentive-based transfer for one year. He does not provide any evidence that inmate barbers or inmate cooks are excluded from this policy. Nor does he show that other inmate mechanics were excluded from this policy. This requirement is rationally related to a legitimate state interest sufficient to survive an equal protection challenge. Moreover, Plaintiff has not shown any purposeful discrimination as his transfer denial was based on DOC policy. He was eligible to pursue his ASE certifications and re-certifications in January of 2009 by requesting a transfer to an appropriate facility. There is no constitutional requirement for DOC to implement a policy allowing Plaintiff or other auto mechanics to transfer to another facility to obtain re-certification of licenses whenever they so desire. Plaintiff should have determined what

facility provided the correct ASE re-certification course before he applied for a transfer to SCI-Mercer.  Moreover, to the extent he was given wrong information as to what courses were offered at SCI-Mercer, such would not provide the basis for finding any violation of his constitutional rights.  Consequently, Defendants are entitled to summary judgment with respect to Plaintiff's claim of discrimination.[4]

### G. Liability Against Defendants Harlow, Beard and the DOC

In order to be liable under Section 1983, a Plaintiff must show that the defendant was personally involved or had actual knowledge of and acquiesced in the commission of the wrong.  *See* Rizzo v.Goode, 423 U.S. 362 (1976); Evancho v. Fisher, 423 F.3d 347 (3d Cir.2005).  Plaintiff has not proven any misconduct by the subordinate prison officials he named in his Complaint.  As such, he necessarily cannot establish supervisory liability on the part of those responsible for implementing and promulgating the policies under which he predicates his claims.  *See* Camp v. Brennan,  54 Fed. Appx. 78, 81-82 (3d Cir. Dec. 5, 2002) (citing Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir.1986)).

Plaintiff's action against the DOC is barred by sovereign immunity as set forth in the Eleventh Amendment.  In this regard, the Eleventh Amendment to the United States Constitution provides as follows.

---

4.  In addition, providing preferential treatment to inmates who want to become cooks or barbers would be considered a reasonable penological purpose as DOC must feed inmates and provide hair cutting services.  Thus, such inmates provide a useful service within the DOC institutions. As inmates do not need cars, auto mechanic certification does not provide as useful a vocation as a barber or cook.   Thus, disparate treatment, even if it occurred, would not violate the equal protection clause.

>The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

The withdrawal of jurisdiction in the Eleventh Amendment confers upon the individual states immunity from suit in the federal courts.  This grant of sovereign immunity encompasses not only suits in which a state is a named defendant but also extends to suits brought against state agents and state instrumentalities that have no existence apart from the state, *see* Regents of the University of California v. Doe, 519 U.S. 425 (1997); Alabama v. Pugh, 438 U.S. 781, 782 (1978), and applies to suits brought by citizens of the defendant state as well.  *See* Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984).  Notwithstanding, the immunity provided in the Eleventh Amendment is not absolute.  A state may expressly waive its grant of sovereign immunity by state statute or constitutional provision.  In addition, Congress can abrogate the States' Eleventh Amendment immunity through a statute enacted under constitutional authority granting Congress the power to regulate the activities of the states.  *See, e.g.*, Pennsylvania v. Union Gas Co., 491 U.S. 1, 15 (1989) (Commerce Clause, which allows Congress to restrict interstate trade activity); Atascadero State Hospital v. Scanlon, 473 U.S. 234, 246 (1985) (section five of the Fourteenth Amendment, which allows Congress to enforce the provisions of the Fourteenth Amendment).  However, Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself.  Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55 (1996); Atascadero, 473 U.S. at 246.

The DOC is a part of the executive department of the Commonwealth of Pennsylvania.  *See* Pa. Stat. tit. 71, § 61.  Thus, it shares in the Commonwealth's Eleventh Amendment immunity.  *See* Lavia v. Pennsylvania, Dept. of Corrections, 224 F.3d 190, 195 (3d Cir. 2000).  Moreover, the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity with respect to actions pursued under the Civil Rights laws.  In this regard, Pennsylvania's constitution states that "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." Pa. Const. Art. 1, § 11 (emphasis added).  The Pennsylvania legislature has, by statute, expressly declined to waive its Eleventh Amendment immunity. *See* 42 Pa. Const. Stat § 8521(b) ("Nothing contained in this subchapter [on actions against Commonwealth parties in civil actions and proceedings] shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.").  None of the exceptions to sovereign immunity contained in 42 Pa. Cons. Stat. § 8522 are applicable to Plaintiff's claims.  Moreover, the federal courts repeatedly have held that Congress did not abrogate the state's Eleventh Amendment immunity when it enacted the Civil Rights Act, 42 U.S.C. § 1983. *See, e.g.*, Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); Quern v. Jordan, 440 U.S. 332, 341 (1979).

## H. Conspiracy Claim

In the instant action, Plaintiff makes bald accusations that Defendants conspired together to violate his constitutional rights.  Not only has Plaintiff failed to show that he suffered any

violation of his constitutional rights, he has failed to allege any facts showing an agreement or plan formulated and executed by any of the Defendants to achieve a conspiracy.  Absent allegations showing any agreement to deny Plaintiff's rights, Plaintiff's bald allegations of conspiracy are insufficient to state a claim upon which relief can be granted.[5]  Consequently, Defendants are entitled to summary judgment as to Plaintiff's claims of conspiracy.  *See* Batista-Dominicci v. Gil-De-La-Madrid, 39 Fed. Appx. 623, 2002 WL 1551701 (1st Cir. July 12, 2002) (affirming District Court's holding that the plaintiff's allegations of conspiracy were conclusory and insufficient to overcome the prosecutor's claim to absolute immunity); Pratt v. Capozzo, 107 F.3d 873 (Table), 1997 WL 73817 (7th Cir., Feb 19, 1997) (plaintiff's vague allegations of conspiracy by defense attorney, prosecutor, and probation officer dismissed as frivolous); House v. Belford, 956 F.2d 711 (7th Cir. 1992) (holding that appellant's conclusory allegations of a conspiracy between the prosecutor and the detective-witness did not pierce the prosecutor's absolute immunity).

## I. State Law Claims

Plaintiff includes state law claims in his Complaint.  A federal court has "supplemental jurisdiction" over claims that are "part of the same case or controversy" as a claim over which the court has original jurisdiction.  28 U.S.C. § 1367(a).  Subsection 1367(c) authorizes a federal court to decline jurisdiction over state claims even though the court has federal jurisdiction when:

---

5.   *Accord* Panayotides v. Rabenold, 35 F. Supp. 2d 411 (E.D. Pa.. 1999); Bieros, 860 F. Supp. at 223 (complaint alleging conspiracy dismissed for failure to state a claim); Flanagan v. Shively, 783 F. Supp. 922, 928-29 (M.D. Pa.) (motion to dismiss granted because allegations were insufficient and conclusory), *aff'd*, 980 F.2d 722 (3d Cir. 1992), *cert. denied*, 510 U.S. 829 (1993). *See also* Green v. City of Paterson, 971 F. Supp. 891 (D.N.J. 1997) (allegations failed to establish any factual basis for an agreement to deprive plaintiff of his constitutional rights).

1.      the claim raises a novel or complex issue of State law;

2.      the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

3.      the district court has dismissed all claims over which it has original jurisdiction; or

4.      in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c).

When "the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). Plaintiff's state law claims will be dismissed as considerations of judicial economy, convenience, and fairness to the parties do not provide an affirmative justification for retaining jurisdiction. *Accord* Lovell Manufacturing v. Export-Import Bank of the U.S., 843 F.2d 725, 734 (3d Cir. 1988). An appropriate order follows.

## <u>ORDER</u>

**AND NOW**, this 9th day of September, 2009;

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (doc. no. 18) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (doc. no. 23) is DENIED.

By the Court

<u>/s/ Arthur J. Schwab</u>

Arthur J. Schwab

United States District Judge

cc:    Miguel Jose Garcia, DC-7048

       SCI Chester, C-A-45

       500 East 4th Street

       Chester, PA 19013